# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-cv-03088 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CITY OF WAUKEGAN, MICHAEL URBANCIC, WILLIAM BIANG, PHIL STEVENSON, MIGUEL JUAREZ, DAVID DEPREZ, and BENNY STARKS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Michael Urbancic, William Biang, Phil Stevenson, David Deprez (collectively, "Individual Insureds") and the City of Waukegan ("City," and together with the Individual Insureds, "Waukegan Insureds") have asserted a counterclaim for declaratory judgment against Scottsdale Insurance Company ("Scottsdale"). The Waukegan Insureds seek a declaration that Scottsdale has a duty to defend and indemnify them in two lawsuits arising out of alleged malfeasance that led to the imprisonment of Defendant Benny Starks for a crime Starks did not commit. Scottsdale has filed a motion to dismiss the Waukegan Insureds' counterclaim ("Motion"). (Dkt. No. 52.) For the reasons stated below, the Court grants the Motion in part.[1]

---

[1] While the Motion was pending, the Waukegan Insureds filed a First Amended Counterclaim to reflect the filing of the Fourth Amended Complaint in the underlying litigation. (*See* Dkt. No. 63.) As the amendment did not impact the arguments raised in the parties' briefing, the Court construes the Motion as directed toward the First Amended Counterclaim. Furthermore, as used in this Memorandum Opinion and Order, the term "counterclaim" refers to the current version of that pleading.

# BACKGROUND[2]

Scottsdale issued the City four policies for law enforcement liability insurance providing coverage for damages arising out of performance of the Waukegan Insureds' duties to provide law enforcement activities, which were effective from November 1, 1987 until November 1, 1991 ("LEL Policies"). (Countercl. ¶¶ 17-18, Dkt. No. 73.) The LEL Policies each expressly provide coverage for damages arising from claims of false arrest, detention, imprisonment, malicious prosecution, and civil rights violations, among other things. (*Id.* ¶ 20.) The LEL policies are occurrence policies, *i.e.*, they provide coverage for claims occurring during their policy periods. (*Id.* ¶ 19.) Each of the LEL Policies also includes a duty to defend provision. (*Id.* ¶ 21.)

Starks filed the underlying litigation against the Waukegan Insureds ("*Starks* Suit") in 2009, alleging, among other things, that the Waukegan Insureds caused him to be wrongfully charged, prosecuted, and convicted for the offense of sexual assault. (*Id*. ¶ 22.) Starks asserts that they accomplished this by falsifying or improperly altering evidence, by suppressing and destroying exculpatory evidence, and by giving false testimony. (*Id.*) His claims arise out of occurrences on various dates during the time period beginning with his arrest in 1986 and lasting until the present day. (*Id.*) Another defendant in the *Starks* Suit, Sharon Thomas-Boyd, filed a cross-claim against the City seeking indemnification for any judgment rendered against her, as well as indemnification for her attorneys' fees and litigation costs ("*Thomas-Boyd* Suit"). (*Id* ¶ 32.) The Waukegan Insureds timely tendered the *Starks* Suit and the *Thomas-Boyd* Suit to Scottsdale for defense and indemnification. (*Id.* ¶¶ 3-4.) Scottsdale has agreed to provide a defense for the *Starks* Suit, but has refused to provide coverage for defense costs in that suit

---

[2] **The following facts are taken from the Waukegan Insureds' counterclaim and accepted as true for the purposes of the Motion.**

despite the deductible on the LELs having been exhausted. (*Id.* ¶ 5.) Scottsdale has further declined any obligation to defend or indemnify the *Thomas-Boyd* Suit. (*Id.* ¶ 6.)

Scottsdale instituted this action seeking a declaratory judgment that it owes no obligation under the LEL Policies for the Waukegan Insureds' potential liability in the *Starks* Suit or *Thomas-Boyd* Suit. The Court previously granted the Waukegan Insureds' motion to dismiss several counts of Scottsdale's original complaint, finding that any determination of the issues raised in these counts would violate Illinois's *Peppers* doctrine, under which a court's coverage determination may not determine ultimate facts in controversy that could bind the parties in the underlying litigation. (*See* 7/21/2014 Mem. Op. and Order, Dkt. No. 43). After the Court granted the Waukegan Insureds' motion to dismiss, Scottsdale filed a second amended complaint (Dkt. No. 45) and the Waukegan Insureds responded with a counterclaim (Dkt. No. 48). This was followed by a third amended complaint (Dkt. No. 60) and First Amended Counterclaim (Dkt. No. 63). In its current incarnation, the counterclaim asks the Court to find the following:

- that the *Starks* Suit entails one or more occurrences or potential occurrences, as defined under the LEL Policies, thus triggering coverage, including a duty to defend, under the those policies (Count I);

- that the *Thomas-Boyd* Lawsuit entails one or more occurrences or potential occurrences, as defined under the LEL Policies, thus triggering coverage, including a duty to defend, under those policies (Count II);

- that by failing to defend the Waukegan Insureds in the *Starks* Suit, Scottsdale has breached the provisions of the LEL Policies (Count III); and

- that by failing to defend the Waukegan Insureds in the *Thomas-Boyd* Lawsuit, Scottsdale has breached the provisions of the LEL Policies (Count IV).

Scottsdale has filed an answer to Counts I and II of the Counterclaim moved to dismiss Counts III and IV.

**DISCUSSION**

"A motion under Rule 12(b)(6) tests whether the [counterclaim] states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a counterclaim must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The counterclaim must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The Court construes a counterclaim in the light most favorable to the plaintiff and accepts all well-pled facts as true. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

Here, Scottsdale moves to dismiss Counts III and IV of the counterclaim, each of which asks the Court for a number of different forms of relief. In essence, the Waukegan Insureds seek three forms of relief with respect to each of the *Starks* and *Thomas-Boyd* Suits: (a) a declaration that Scottsdale breached the LEL Policies by failing to provide a defense to the Waukegan Insureds; (b) a declaration that Scottsdale is obligated to indemnify the Waukegan Insureds as to any judgment in either of the underlying lawsuits; and (c) reimbursement for attorneys' fees and costs relating to the litigation.

Scottsdale has moved to dismiss Counts III and IV arguing, first, that a determination of a breach of the duty to defend is inappropriate given the state of the underlying litigation; and second, that Scottsdale's duty to indemnify is not ripe for determination. The Court addresses each of these arguments in turn.

### I. Breach of Scottsdale's Duty to Defend

Counts III and IV may proceed to the extent that they ask the Court to determine whether Scottsdale has breached its duty to defend. Scottsdale argues that this issue is not ripe for determination. However, according to the allegations in the counterclaim, the Waukegan Insureds have incurred damages in the form of defense fees and costs that should be subject to coverage under the LEL Policies. (Countercl. ¶ 62, Dkt. No. 63.) The incurrence of defense fees in this context makes the breach of the duty to defend ripe. *See, e.g., Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1089 (N.D. Ill. 2004)*; see also Hanover Ins. Group v. Singles Roofing Co., Inc.*, No. 10 C 611, 2012 WL 2368328, at *5 (N.D. Ill June 21, 2012) (breach of contract claim involving defendant's duty to indemnify was ripe once plaintiff had incurred expenses relating to indemnity). In other words, once the Court determines whether Scottsdale has a duty to defend the *Starks* Suit or the *Thomas-Boyd* Suit, it will be in a position to determine whether Scottsdale has breached these duties, should they exist.

Scottsdale contends that the *Peppers* doctrine prevents the Court from determining whether or not Scottsdale has breached its duty to defend, should such a duty exist. Under Illinois law, the *Peppers* doctrine provides that "it is generally inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation." *Allstate Ins. Co. v. Kovar*, 842 N.E.2d 1268, 1275 (Ill. App. Ct. 2d Dist. 2006) (citing *Maryland Cas. Co. v. Peppers*, 355 N.E. 2d 24, 30 (Ill. 1976)). However, the *Peppers* doctrine does not prevent a court from determining factual issues "relevant to an insurer's duty to defend its insured in a pending and unresolved lawsuit when those factual determinations do not impact upon the underlying plaintiff's ability to pursue a theory of liability or resolve any issue critical to the insured's liability in the underlying

litigation." *Fremont Comp. Ins. Co. v. Ace-Chicago Great Dane Corp.*, 710 N.E.2d 132, 139 (Ill. App. Ct. 1st Dist. 1999)*; see also Medline Indus., Inc. v. Ram Med., Inc.*, 892 F. Supp. 2d 957, 964-65 (N.D. Ill. 2012) ("a claim for breach of duty to defend is ripe during the pendency of the underlying suit.") (citing *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003); *Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 589 (7th Cir. 1970)). Scottsdale makes general arguments that resolution of whether Scottsdale breached its duty to defend necessarily includes fact determinations regarding whether all terms of the policy have been met or whether there is an exclusion barring coverage. (Def.'s Mot. ¶ 16, Dkt. No. 52.) However, Scottsdale fails to identify any fact relevant to the determination of whether Scottsdale breached its duty to defend that would impact the underlying litigation. Nor is it apparent to the Court how determining whether Scottsdale breached any duty to defend could possibly implicate the *Peppers* doctrine.

Scottsdale further argues that a determination that it breached its duty to defend is premature based on a line of cases beginning with *Fidelity & Casualty Company of New York v Envirodyne Engineers, Inc.*, 461 N.E. 2d 471 (Ill. App. Ct. 1st Dist. 1984). However, Scottsdale misapprehends *Environdyne* and its progeny. Under Illinois law, the duty to defend is generally determined by comparing the allegations of the underlying complaint to the policy language. *See Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1221 (Ill. 1992). *Environdyne* and its progeny hold that an insurer may challenge the existence of its duty to defend by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions, so long as that evidence does not tend to determine an issue critical to the determination of the underlying lawsuit. *Envirodyne*, 461 N.E.2d at 473-74*; see also Fremont Comp. Ins. Co.*, 710 N.E.2d at 138; *Millers Mut. Ins. Ass'n v. Ainsworth Seed Co.*, 552 N.E.2d

254, 256 (Ill. App. Ct. 4th Dist. 1989); *Safeco Ins. Co. v. Brimie*, 516 N.E.2d 577, 580 (Ill. App. Ct. 1st Dist. 1987). Contrary to Scottsdale's suggestion, the *Environdyne* line of cases concerns a court's determination of an insurer's duty to defend, and does not pertain to a Court's determination of whether an insurer has breached such a duty. Thus, while Scottsdale is free to raise arguments regarding its duty to defend pursuant to *Envirodyne* at the appropriate stage of these proceedings, the Court will not construe *Envirodyne* as precluding the determination of whether Scottsdale breached any duty to defend it owed the Waukegan Insureds.

## II.     Obligation to Indemnify

Counts III and IV of the counterclaim are dismissed to the extent they ask the Court to find that Scottsdale is obligated to indemnify the Waukegan Insureds. These claims are not ripe for consideration. "[T]he question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it." *Outboard Marine Corp.*, 607 N.E.2d at 1221. Because there has been no determination of liability in the underlying litigation, it is premature for the Court to determine whether Scottsdale has a duty to indemnify any damages levied against the Waukegan Insureds in the underlying litigation.

In arguing to the contrary, the Waukegan Insureds rely upon the Seventh Circuit case *Bankers Trust Co. v. Old Republic Insurance Co.*, 959 F.2d 677 (7th Cir. 1992). That case acknowledged the general rule that a declaratory judgment action regarding an insurer's duty to indemnify "is premature until the insured has been determined to be liable to somebody," but nonetheless held that a duty to indemnify claim was justiciable where there was a sufficient probability that the plaintiff in the underlying action would win a judgment "in excess of the meager policy limits." *Id.* at 680. *Bankers Trust* is distinguishable, however. In that case, the

7

Seventh Circuit looked only to the probability of whether the insured would be found liable and whether the amount for which it would be found liable would be sufficient to surpass the insurance policy limits. *See Buckley v. Cnty. of Dupage*, No. 88 C 1939, 1998 WL 832641, at *6 (N.D. Ill. Nov. 23, 1998) (noting limitations of the *Bankers Trust* holding). In the case before this Court, Scottsdale challenges both (1) whether any claims for which the Waukegan Insureds are found liable fall within the LEL Policies' coverage and, if so, whether they are barred by various exclusions; and (2) the timeframe of the claims and whether the wrongdoing alleged in the underlying litigation took place outside of the timeframes covered by the LEL Policies. As discussed in the Court's prior order dismissing Counts III through VII of Scottsdale's complaint, determining these issues prior to the resolution of the underlying litigation would violate the *Peppers* doctrine. Thus, the duty to indemnify claim is not ripe and must be dismissed.

## CONCLUSION

For the foregoing reasons, Scottsdale's Motion is granted in part. Counts III and IV of the counterclaim are dismissed to the extent they ask the Court to determine indemnity issues in the underlying litigation, as requested in sub-part (b) of Counts III and IV. The Waukegan Insureds are granted leave to refile these claims, if appropriate, after final disposition of the case *Starks v. City of Waukegan, et al.*, No. 09-CV-00348 (N.D. Ill.). The claims asserted in sub-parts (a) and (c) of Counts III and IV of the counterclaim may go forward.

ENTERED:

Dated: February 23, 2015

Andrea R. Wood
United States District Judge

8